Earl Wayne WYATT, Plaintiff–
Appellant,

v.

Cal A. TERHUNE;  Susan Hubbard,
Warden, Defendants–Appellees.

No. 00–16568.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 4, 2001.

Filed Feb. 12, 2002.

Grace K. Won, Douglas R. Young, Farella, Braun & Martel LLP, San Francisco, CA, for the plaintiff-appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Asst. Attorney General, Paul D. Gifford, Senior Deputy Attorney General, Michael G. Lee, Supervising Deputy Attorney General, and Paul A. Bernardino, Deputy Attorney General, Sacramento, CA, for the defendants-appellees.

Before: BRIGHT,* B. FLETCHER and FISHER, Circuit Judges.

* The Honorable Myron H. Bright, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

FISHER, Circuit Judge.

Appellant Earl Wayne Wyatt, a Rastafarian inmate, filed this § 1983 action challenging the California Department of Corrections' hair length regulations as a violation of his constitutional and statutory rights to free exercise of religion and equal protection of the laws. This appeal concerns three procedural issues rather than the merits of Wyatt's claims.

In addressing Wyatt's First Amendment claim, the magistrate judge assigned to the case served on the parties a copy of his findings of fact from a different case challenging the grooming regulations and directed defendants to file a summary judgment motion. He did not explain to Wyatt, a pro se prisoner, the significance of the findings, that he intended to take judicial notice of the findings in Wyatt's case or whether or how Wyatt could dispute the findings in the summary judgment process. Once defendants filed their summary judgment motion, the magistrate judge indeed took extensive judicial notice of his prior findings and recommended that the district court grant defendants summary judgment; the district court adopted the findings and recommendation of the magistrate judge in full. On appeal, Wyatt challenges the magistrate judge's novel procedure as an improper use of judicial notice. We do not decide whether use of the prior findings—at least in some fashion—was improper. Rather, we conclude the procedure adopted here was flawed because it did not meet the requirements of our fair notice doctrine, under which the district court bears the responsibility of assuring that a pro se prisoner litigant receives meaningful notice of summary judgment procedures and requirements. We therefore reverse the summary judgment on that ground.

The district court also dismissed Wyatt's religious discrimination claim under a provision of the Religious Freedom Restoration Act (RFRA) that had been declared unconstitutional. While appeal of that dismissal was pending, Congress enacted the Religious Land Use and Institutionalized Persons Act (RLUIPA), which replaces the void provisions of RFRA. We have discretion to remand a case to the district court for further consideration when new laws likely to influence a decision have become effective during the pendency of an appeal. On remand, the district court should grant Wyatt leave to amend his complaint to include a claim under RLUIPA.

The district court also granted defendants' motion to dismiss Wyatt's equal protection claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, ruling that Wyatt had failed to demonstrate exhaustion of the inmate appeals process before filing suit, as required by the Prison Litigation Reform Act (PLRA). Whether the PLRA exhaustion requirement is an affirmative defense or a pleading requirement is an issue of first impression in this Circuit. We adopt the rule of the majority of circuits and hold that it is an affirmative defense. The burden of establishing nonexhaustion therefore falls on defendants. Because defendants did not meet this burden, we also reverse the dismissal of Wyatt's equal protection claim.

**Facts and Procedural Background**

Wyatt is an inmate incarcerated at Mule Creek State Prison in Ione, California, serving a 17–year sentence for voluntary manslaughter. As a tenet of his Rastafarian religion, Wyatt wears his hair in dreadlocks. Defendants do not dispute that Wyatt's religious beliefs are sincerely held or that dreadlocks are a means of practicing the Rastafarian religion. Seeking temporary and permanent injunctive relief, Wyatt filed this § 1983 action in pro per against Cal Terhune and Susan Hubbard

Defendants filed the invited motion for summary judgment. They attached a copy of the *Toyebo* findings as an exhibit, but did not explain in their motion whether or how the findings were being proffered as evidence. At that time, Wyatt did not object to defendants' attachment of the *Toyebo* findings as an exhibit, nor did he submit evidence refuting them.

In a written report to the district court judge recommending summary judgment, the magistrate judge took extensive judicial notice of the *Toyebo* findings. Relying on the *Toyebo* findings, the magistrate judge adopted as undisputed facts: (1) the list of defendants' justifications for the grooming regulations; (2) defendants' testimony regarding the adverse impact of accommodating religion by providing an exception to the regulations; and (3) the finding that the increase in size of the prison population had escalated the number of searches that must be conducted.[4] Based almost entirely on these judicially noticed findings, the magistrate judge applied the four-factor analysis for alleged violations of prisoners' constitutional rights under *Turner v. Safley*, 482 U.S. 78, 89–91, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), deemed Wyatt's case controlled by *Friedman v. Arizona*, 912 F.2d 328 (9th Cir. 1990) (upholding prison grooming regulations prohibiting facial hair), and recommended that the district court enter summary judgment in favor of defendants.

The district court adopted the magistrate judge's recommendation.

■ Although Wyatt never formally objected to judicial notice of the *Toyebo* findings, he did state in his objections to the magistrate judge's report:

> The Magistrate furthermore relies upon the ruling in [*Toyebo*]. Plaintiff's objections are based upon the fact the court has failed to take into consideration plaintiff's action on a case by case basis for which differs from that of *Friedman* and *Toyebo*, surrounding essential issues and arguments that differ in this action before the court.

Represented by counsel in this appeal, Wyatt contends that the magistrate judge's use of the *Toyebo* findings constituted an improper procedural shortcut and that judicial notice was improper under Federal Rule of Evidence 201. Although we appreciate that the magistrate judge was attempting to utilize an expeditious procedure, we have held that taking judicial notice of findings of fact from another case exceeds the limits of Rule 201. *See M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir.1983) (stating general rule that "a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it").[5] We

---

4. The magistrate judge took judicial notice of several other facts from *Toyebo* as well, including the penalties imposed on an inmate who fails to comply with the grooming regulations and that no religious exception exists for the grooming regulations. These facts, however, were independently supported by other evidence in the record of this case, including the regulations themselves.

5. Factual findings in one case ordinarily are not admissible for their truth in another case through judicial notice. *See* 21 Charles Alan Wright & Kenneth A. Graham, Jr., Federal Practice & Procedure § 5106(Supp.2001) (stating "courts should distinguish between taking judicial notice of the truth of some extrajudicial fact recited in a court record and the use of those facts for some purpose that does not depend on the truth of the facts recited"). In agreement with *M/V Am. Queen*, our sister circuits have held that a court may not take judicial notice of findings of fact from a different case for their truth. *Taylor v. Charter Medical Corp.*, 162 F.3d 827, 830 (5th Cir.1998); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66,

need not resolve this appeal on that basis, however, because we conclude that the novel summary judgment procedure the magistrate judge adopted, without clear instructions to Wyatt on how to navigate the procedure, runs afoul of our decision in *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc), and requires reversal.

Under our precedents, the district court bears the responsibility of assuring that a pro se prisoner litigant receives fair notice of summary judgment requirements. *Rand*, 154 F.3d at 960. Because of "the complexity of the summary judgment rule combined with the lack of legal sophistication of the pro se prisoner," the prisoner must obtain notice "phrased in ordinary, understandable language calculated to apprise an unsophisticated prisoner of his or her rights and obligations under Rule 56." *Id.; see Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir.1988) (holding that district courts are obligated to advise prisoner pro per litigants of Federal Rule of Civil Procedure 56 requirements).[6]

Assuming that the magistrate judge's June 14, 1999 order provided Wyatt with fair notice pursuant to *Rand*, the magistrate judge's February 4, 2000 order undermined that earlier notice. The latter order does not explain what purpose the *Toyebo* findings would serve, whether or how Wyatt could refute them or how they were to be reconciled with the June

14 *Rand* notice. Nor could Wyatt turn to the June 14 order for answers to these questions. That order makes no reference to any procedure to be followed when the court serves on the pro se prisoner judicial findings of fact from another case. Although the order explains the procedure Wyatt could follow to "contradict *defendant's* evidence with counteraffidavits or other admissible evidence (emphasis added)," it offers no clear guidance on whether Wyatt could refute the *Toyebo* findings and, if so, how.

A *Rand* notice is ineffective when a subsequent order injects renewed uncertainty and complexity into the summary judgment procedure, creating the potential for those harms that our fair notice rule strives to avoid. When the magistrate judge issued his order of February 4, he was obligated by the principles we affirmed in *Rand* to provide Wyatt with fair notice of the significance of his act of serving the *Toyebo* findings on the parties, Wyatt's right to refute them, how to refute them and the consequences of his failure to do so.

Under the right circumstances and with a proper regard for the fairness of the proceedings, a district court is not barred from utilizing fair and proper procedures that may economize judicial resources. Pro se prison litigants, however, should not be saddled with findings from prior

70 (2d Cir.1998); *Gen. Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082–83 & n. 6 (7th Cir.1997); *Orix Credit Alliance, Inc. v. Delta Resources, Inc. (In re Delta Resources, Inc.)*, 54 F.3d 722, 726 (11th Cir.1995); *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir.1994); *Holloway v. Lockhart*, 813 F.2d 874, 878–79 (8th Cir. 1987).

6. *Rand* requires that the prisoner be "informed of his or her right to file counteraffidavits or other responsive evidentiary ma-

terials and be alerted to the fact that failure to do so might result in the entry of summary judgment against the prisoner." 154 F.3d at 960. The pro se prisoner must be "informed of the effect of losing on summary judgment." *Id.* The notice also should state that if the pro se prisoner fails to controvert the moving party with opposing counter-affidavits or other evidence, the moving party's evidence might be taken as the truth, and final judgment may be entered against the prisoner without a trial. *Id.* at 960–61.

cases where they had no say in the development of the record or in the strategic decisions from which that record resulted. The procedure here was neither proper nor fair. Because the magistrate judge did not take the steps required by *Rand*, we hold that the summary judgment procedure was in error and reversal is required.[7]

## II. RLUIPA Claim

In his complaint, Wyatt alleged a violation of the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb–1. The district court dismissed the claim because *City of Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), had declared RFRA unconstitutional as applied to the states. Subsequently, Congress enacted the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc–1, which provides rights similar to those delineated in RFRA. Wyatt contends that his RFRA claim should be construed as a RLUIPA claim and reinstated. Defendants argue that RLUIPA was not pled or argued below and, therefore, is not before this court.

■ Although we construe a pro se prisoner's pleadings liberally, *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir.2000), we decline to construe Wyatt's RFRA claim as a RLUIPA claim or to consider the merits of Wyatt's RLUIPA claim for the first time on appeal. Nonetheless, the district court on remand should grant Wyatt leave to amend his complaint to plead a claim under RLUIPA. "This court may remand a case to the district court for further consideration when new cases or laws that are likely to influence the decision have become effective after the initial consideration." *White Mountain Apache Tribe v. Arizona*, 649 F.2d 1274, 1285–86 (9th Cir.1981).

## III. Equal Protection Claim

■ Wyatt contends that the grooming regulations violate his rights under the equal protection clause of the Fourteenth Amendment because they apply to men but not to women. The district court dismissed this claim for failure to exhaust administrative remedies as required by the PLRA, which states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[8]

■ We review de novo the district court's decision to dismiss a § 1983 action for failure to state a claim upon which

---

**7.** For similar reasons, we express concern with the magistrate judge's refusal to grant Wyatt's informal request, contained in his opposition to defendants' motion for summary judgment, for a stay pending discovery. The magistrate judge dismissed Wyatt's request for a stay on the ground that Wyatt had not complied with Rule 56(f). The court's June 14, 1999 order suggests that a request for a stay, whether or not in conformity with Rule 56(f), would be considered by the court, stating, "[i]f there is some good reason why such facts are not available to plaintiff when required to oppose such a motion, the court will consider a request to postpone considering defendant's motion." Wyatt's request "to stay defen-

dants['] motion until plaintiff has been [served] with the requested discovery [responses by] defendants" appears to have complied with the June 14 order.

**8.** Defendants moved for dismissal for failure to exhaust under both Rule 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim. As defendants acknowledged below, this Circuit has said that the PLRA's exhaustion requirements are not jurisdictional, *Rumbles v. Hill*, 182 F.3d 1064, 1067–68 (9th Cir.1999). We therefore consider only Rule 12(b)(6).

relief can be granted pursuant to Rule 12(b)(6). *Morales v. City of Los Angeles,* 214 F.3d 1151, 1153 (9th Cir.2000). All factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in favor of the nonmoving party. *TwoRivers v. Lewis,* 174 F.3d 987, 991 (9th Cir.1999).

### A.

Disposition of this issue turns on whether the PLRA's exhaustion requirement imposes a pleading requirement on the prisoner or creates an affirmative defense. We have yet to address this question and those circuits to have done so have reached different answers. The Sixth Circuit has imposed the burden on the prisoner, holding that to satisfy the requirements of § 1997e(a) the prisoner must allege that he exhausted all available administrative remedies and should attach to his complaint the administrative decision, if it is available, showing the disposition of the administrative claim. *Brown v. Toombs,* 139 F.3d 1102, 1104 (6th Cir.1998) (per curiam). In contrast, the Second, Seventh, Eighth and D.C. Circuits have treated exhaustion as an affirmative defense. *See Jackson v. District of Columbia,* 254 F.3d 262, 267(D.C.Cir.2001); *Foulk v. Charrier,* 262 F.3d 687, 697 (8th Cir.2001); *Perez v. Wisconsin Dep't of Corr.,* 182 F.3d 532, 536 (7th Cir.1999); *Massey v. Helman,* 196 F.3d 727, 735 (7th Cir.1999); *Jenkins v. Haubert,* 179 F.3d 19, 28–29 (2d Cir.1999).

We believe the majority of circuits have decided this question correctly. We agree with Judge Easterbrook that exhaustion under the PLRA is comparable to a statute of limitations, which is an affirmative defense. *See Perez,* 182 F.3d at 536; Fed. R.Civ.P. 8(c). In *Toombs,* the Sixth Circuit held to the contrary, emphasizing the strong language of § 1997e(a)—which begins "[n]o action shall be brought." 139

F.3d at 1104. But "[t]he language of statutes of limitations tend[s] to be equally imperative." *Jackson v. District of Columbia,* 89 F.Supp.2d 48, 56 (D.D.C.2000), *vacated and remanded on other grounds by* 254 F.3d 262 (D.C.Cir.2001). For instance, California law states that an action "must be commenced" within the limitations period. Cal. Civ.Code § 3249. We do not believe the PLRA's language dictates the Sixth Circuit's rule. .

Moreover, other indications of congressional intent support the majority rule. The PLRA gives the district court authority to dismiss a suit sua sponte "if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c)(1). Notably, Congress did not choose to mention exhaustion in this provision. We also presume that Congress was aware that exhaustion requirements generally tend to be treated as affirmative defenses. *See, e.g., Bowden v. United States,* 106 F.3d 433, 437 (D.C.Cir.1997) ("Because untimely exhaustion of administrative remedies is an affirmative defense [in Title VII actions], the defendant bears the burden of pleading and proving it."); *Little v. United States,* 794 F.2d 484, 487 n. 2 (9th Cir. 1986) ("[E]xhaustion of administrative remedies [is an] affirmative defense[ ]."); *Daugherity v. Traylor Bros., Inc.,* 970 F.2d 348, 352(7th Cir.1992) (treating exhaustion under the Age Discrimination in Employment Act as an affirmative defense). We discern no intention on the part of Congress to depart from this general approach.

To the extent the exhaustion provision is ambiguous, we conclude that policy considerations also support the majority rule. Imposing a technical pleading requirement would run contrary to the liberal approach

we take to pleadings by pro se prisoners. *See, e.g., United States v. Ten Thousand Dollars ($10,000.00) in U.S. Currency,* 860 F.2d 1511, 1513 (9th Cir.1988) (quoting *Garaux v. Pulley,* 739 F.2d 437, 439 (9th Cir.1984)) ("We have consistently held in this circuit that courts should liberally construe the pleadings and efforts of pro se litigants, particularly 'where highly technical requirements are involved.' "). In addition, prison officials are likely to have greater legal expertise and, as important, superior access to prison administrative records in comparison to prisoners, especially, as is often the case, when prisoners have moved from one facility to another.

■■■ We therefore adopt the majority rule and hold that exhaustion under § 1997e(a) of the PLRA is an affirmative defense.

### B.

■■■ Defendants raised exhaustion in their motion to dismiss under Rule 12(b)(6).[9] An affirmative defense may be raised in a motion to dismiss only if it raises no disputed issues of fact. *Scott v. Kuhlmann,* 746 F.2d 1377, 1378(9th Cir. 1984). Ordinarily, a court may look only at the face of the complaint to decide a motion to dismiss.

Wyatt's complaint contained exhibits reflecting that he took advantage of the administrative review process after he was disciplined for failing to comply with the inmate grooming regulations. The documents support the inference that Wyatt completed at least the "second level" appeal process. In their motion to dismiss, defendants argued that Wyatt had failed to establish exhaustion because "he has only provided evidence of appeal through the

second level. No Director's Level appeal decision has been attached to the complaint." Defendants produced an affidavit stating that the Director's Level appeal is the third and final step in the administrative review process. They also attached an exhibit to their motion to dismiss, which they refer to as Wyatt's "Appeal Record," purporting to show that Wyatt has filed only one appeal at the Directors Level since January 1, 1994. Defendants asserted in their motion to dismiss—but not in the affidavit—that the one appeal reflected in the Appeal Record "was for an issue other than the grooming standard and [was] submitted in January 1998."

In light of our conclusion that exhaustion raises an affirmative defense, we hold that the dismissal of Wyatt's equal protection claim for failure to exhaust cannot be sustained. First, the face of Wyatt's complaint and exhibits thereto do not establish a failure to exhaust. Second, the evidence of failure to exhaust included with defendants' 12(b)(6) motion was not properly reviewable on a motion to dismiss because it consisted of documents that were not referred to in the complaint. *See Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir.2001) (stating that documents not physically attached to the complaint may be considered on a motion to dismiss only if their authenticity is not contested and the plaintiff's complaint necessarily relies on them). Such evidence could not be considered without converting defendants' 12(b)(6) motion into a motion for summary judgment, which did not occur. *See Anderson v. Angelone,* 86 F.3d 932, 934–35 (9th Cir.1996) (recognizing that before a court may convert a motion to dismiss into a motion for summary judgment, the prisoner-plaintiff must receive notice of the

---

**9.** Defendants also raised exhaustion as an affirmative defense in their answer, filed after the proceedings relevant to this appeal, there-

by indicating their own uncertainty as to who had the burden on exhaustion.

conversion and a reasonable opportunity to present responsive evidence).

Third, even if we were to consider defendants' motion as a motion for summary judgment, we would conclude that the evidence submitted by defendants was insufficient to establish nonexhaustion. The affidavit submitted makes no mention of whether Wyatt has exhausted administrative appeals. The exhibit referred to by defendants as the "Appeal Record" and purporting to show that Wyatt has made no Director's Level appeal in this matter is ambiguous on its face. It does not indicate the nature of Wyatt's January 1998 appeal or prove that Wyatt did not make a Director's Level appeal regarding the grooming regulations.[10]

Because we hold that dismissal on exhaustion grounds was erroneous, we need not reach Wyatt's argument that any further administrative appeal would have been futile. We reverse the district court's order granting defendants' motion to dismiss.

### Conclusion

We reverse the summary judgment on Wyatt's First Amendment claim and the Rule 12(b)(6) dismissal of Wyatt's equal protection claim as unexhausted and remand for further proceedings. On remand, the district court also should grant Wyatt leave to amend his complaint to include a claim under RLUIPA.

**REVERSED and REMANDED.**

---

**10.** Defendants are not precluded from raising exhaustion in a new motion for summary judgment in light of our holding today.