Jeffrey E. SIMPSON, Plaintiff

v.

Cheryl GALLANT, et al., Defendants

No. CIV. 02–15–B–K.

United States District Court,
D. Maine.

Sept. 25, 2002.

Jeffrey E. Simpson, South Windham, ME, Pro se.

Michael J. Schmidt, Esq., Wheeler & Arey, P.A., Waterville, ME, for Defendants.

## MEMORANDUM OF DECISION

KRAVCHUK, United States Magistrate Judge.

Jeffrey Simpson is seeking remedies for alleged violations of his constitutional right to have access to the telephone and mail services when he was a pretrial detainee at the Penobscot County Jail. (Docket Nos. 1, 7, 8, & 15.)  A motion to dismiss filed by the defendants, Cheryl Gallant, Richard Clukey, and Edward Reynolds[1] was de-

---

**1.** Edward Reynolds is now deceased.  The parties have not yet moved to substitute the current sheriff.

nied. (Docket Nos. 26 & 31.) The parties have now consented to proceed before the magistrate judge.[2]

Simpson has filed a motion for summary judgment (Docket No. 38) which he has since clarified to be a motion for partial summary judgment vis-à-vis a claim that he was unable to orchestrate bail in the period between October 20, 2001, through January 21, 2002, because he was denied access to a phone despite his express request to use the phone to arrange bail (Docket No. 52). The defendants have responded to this motion and have filed a cross motion for summary judgment as to all of Simpson's claims. (Docket No. 44.)

I **DENY** Simpson's motion for summary judgment and **GRANT** summary judgment to the defendants on Simpson's claim that his constitutional rights were violated when his request to make a collect call to arrange bail was denied. As to the remainder of Simpson's claims relating to phone and mail access I conclude that Simpson has not exhausted his administrative remedies as required by 42 U.S.C. § 1997e(a) and, because the defendants press for disposition on this ground, these claims are **DISMISSED WITHOUT PREJUDICE.**

### Background

Broadly put, Simpson claims that while he was a pretrial detainee at the Penobscot County Jail he was placed in disciplinary segregation for violations of jail rules. During the period he spent in segregation he was completely denied access to the phones and he was allowed to mail only three personal letters a week, with postage paid by the jail pursuant to a jail policy. He was not allowed to send additional mail using his own postage.

On January 21, 2002, Simpson was released from custody on bail that was posted by an associate. On February 21, 2002, Simpson was found not guilty on one charge after a jury trial. On February 14, 2002, all additional counts against Simpson triggering his detention from October 10, 2001, through January 21, 2002, had been dismissed.

Simpson's theory of the case is that Penobscot County Jail policies pertaining to outgoing mail and its policy prohibiting the use of a phone for any reason by inmates not in good standing violated his right to prepare his defense and make bail. At the motion to amend/motion to dismiss juncture it was clarified that Simpson pursues these three defendants in their official capacities challenging the constitutionality of the Jail's policy or custom. *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (observing that a § 1983 suit may be brought "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible for under § 1983").[3]

### Discussion

#### A. Summary Judgment Standard

Typically the summary judgment standard is phrased in terms of moving and nonmoving parties but in this instance the plaintiff and the defendants are cross-mov-

---

**2.** Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge Margaret J. Kravchuk conduct all proceedings in this case, including trial, and to order entry of judgment.

**3.** The parties have provided factual statements pertaining to the issue of final decision-making authority and polices and procedures. There is no meaningful dispute on this score for purposes of making the municipal liability determination and my conclusions below make it unnecessary for me to set forth these facts in any detail.

ants. My determination below turns on the question of exhaustion of administrative remedies (with respect to which the defendants carry the burden) and whether or not there is a genuine dispute of material fact as to Simpson's single exhausted claim involving the denial of his December 1, 2001, request to make a phone call to arrange bail. As I conclude that the summary judgment record on both motions supports judgment for the defendants and does not support judgment for Simpson on his motion, I have analyzed the record treating the defendants as the movants and Simpson as the nonmovant, an approach that favors Simpson.

Summary judgment is appropriate if there are no genuine and disputed issues of material fact and if, viewing the evidence most favorably to Simpson, the defendants are entitled to prevail as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir.2000). The defendants bear the burden of showing that there is no material factual dispute. A disputed fact is material if it "has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93–94 (1st Cir.2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995)).

I must take Simpson's evidence as true, but only evidence that is supported by the affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Simpson's *pro se* status does not excuse him from meeting the summary judgment requirements. *Parkinson v. Goord*, 116 F.Supp.2d 390, 393 (W.D.N.Y.2000)

("[P]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment."). With respect to material facts (as opposed to legal argument[4]) I have drawn all reasonable inferences in favor of Simpson. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■ In undertaking the exhaustion inquiry, the defendants bear the burden of proof on this affirmative defense, *see Casanova v. Dubois*, 304 F.3d 75, 77–78 (1st Cir.2002), and may discharge their burden by demonstrating that there is no record evidence to support Simpson's case on this question, *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. Vis-à-vis Simpson's constitutional claims Simpson would bear the burden at trial, and, as to any essential factual element of his claim on which he would bear the burden of proof at trial, Simpson's failure to come forward with sufficient evidence to generate a trialworthy issue would warrant summary judgment for the defendants. *In re Spigel*, 260 F.3d 27, 31 (1st Cir.2001).

## B. Exhaustion pursuant to § 1997e(a)

As they did in their motion to dismiss the defendants press for dismissal of this entire action on the grounds that Simpson failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). In § 1997e(a) Congress provided:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal

---

4. Simpson's statement of material facts and his reply to the defendants' statement of facts are peppered with legal argument, including discussion of cases and argument on how I

should construe the defendants' answers to his complaint; I have culled the material, properly-supported facts from these pleadings.

law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

In my recommended decision on the motion to dismiss I concluded that Simpson had adequately plead exhaustion for purposes of surviving the motion to dismiss.[5] As anticipated, the record on these cross-motions for summary judgment provides a better basis for making the exhaustion determination. The facts that are material to the exhaustion concern are as follows.

The inmate grievance procedure for the Penobscot County Jail is not disputed by the parties. It is contained in the inmate handbook and provides:

An inmate may file a grievance of an alleged violation of civil, Constitutional, or statutory rights ... or to appeal a previous grievance decision. Jail personnel will provide inmates who wish to report a grievance (consistent with the definition) with a copy of the Grievance form used by the Penobscot County Jail. Completed grievances may be submitted directly to the Corrections Officer, Asst. Shift Supervisor or Shift Supervisor who will sign the grievance indicating receipt of the grievance, to include date and time. Once signed by the Receiving Officer, the inmate will be given a copy of

---

**5.** I wrote:

Simpson alleges that he submitted a slip on December 1, 2001, requesting a phone call so that he could arrange bail and/or call a lawyer. When this request was denied Simpson submitted on the same day a Penobscot County Sheriff's grievance form indicating that he was a pretrial detainee and that he had a right to use the phone to arrange bail or call an attorney which was denied by Assistant Jail Administrator, Richard Clukey, who stated that it did not meet the criteria of a defined grievance and it did not present a grievable issue. On an unspecified date Simpson submitted a request form asking the jail administration to provide the address for his associate, providing them with his phone number and this request was denied. Regarding his mail privileges, Simpson submitted request forms on December 14, 2001, and January 11, 2002, concerning his mail privileges seeking permission to use his own funds to send additional letters and these requests were denied.

Simpson has adequately plead exhaustion for purposes of this motion to dismiss. The defendants' argument that he could have done more does not sufficiently controvert Simpson's claims concerning his efforts to seek redress within the Jail. *Compare Ray v. Kertes,* 285 F.3d 287, 293, 295 (3d Cir.2002) (holding that the Prison Litigation Reform Act (PLRA) exhaustion requirement is an affirmative defense and that a prisoner need neither plead nor prove exhaustion to proceed under the PLRA, noting that the Second, Seventh, Ninth, and D.C. Circuits have so held) *with Knuckles El v. Toombs,* 215 F.3d 640, 642 (6th Cir.2000) (holding that a prisoner was required to "plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome").

(Docket No. 26.)

Notably, since that decision the First Circuit has joined the Third Circuit (as well as the Second, Seventh, Eighth, Ninth, and D.C.) in concluding that exhaustion is an affirmative defense. *Casanova,* at 1042 n. 3. A Ninth Circuit panel has just reworked its *Wyatt v. Terhune,* 280 F.3d 1238 (9th Cir.2002) conclusion vis-à-vis exhaustion as an affirmative defense, adding, among other things, a discussion of the *Swierkiewicz v. Sorema,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) pleading standard and providing that the defense should be treated as a matter of abatement pursued through Federal Rule of Civil Procedure 12(b) instead of a motion for summary judgment. *Wyatt v. Terhune,* 305 F.3d 1033, 2002 WL 31103012, *5–9 (9th Cir. 2002); *Wyatt v. Terhune,* 305 F.3d at 1033 (9th Cir.2002) (denying petition for rehearing *en banc* and withdrawing opinion published at 280 F.3d 1238).

the submitted grievance. When a grievance is resolved, a copy of the written response/finding will be provided to the inmate within twenty-four (24) hours. An inmate may appeal a grievance decision to the next level of command for review, stating the reason for the appeal.

Grievances that appear frivolous in nature or include obscenities or are unrelated to jail operations and activities will not be considered.

Once the inmate has exhausted the internal grievance system, he/she may submit their grievance to the Maine Department of Correction or other review agency for external review. Upon request, jail personnel will provide inmates who wish to report a grievance with adequate writing supplies. Inmate grievances addressed to the Maine Department of Corrections, State House Station # 111, Augusta, Maine 04333 or other review agency are considered legal/privileged correspondence.

(DSMF Ex. 8 at 14.) Though the defendants contend that each inmate is given a copy of this policy upon arrival, Simpson states that he had to make a specific request for one and first had his copy on December 1, 2001.

It is not disputed that Simpson arrived at the Penobscot County Jail on September 26, 2001, and was placed in the maximum security population. Either on October 20 or October 31 [6] Simpson was placed in disciplinary segregation where he stayed until his release on bail on January 21, 2002. The only requests that Simpson submitted for telephone access, postage, or attorney visits were dated December 1, 2001, December 14, 2001, and January 6, 2002.

On December 1, 2001, Simpson submitted a request form on which Simpson had written: "I need to make a collect call for bail pu[r]poses. I can not get through on this phone. Could I please make a 5 minute call." This request form was denied on the same date, the officer indicating: "As I already explained to you, you['re] not authorized use of the phone while in disciplinary lockup." On December 1 Simpson filed an inmate grievance stating: "I asked S[e]rge[a]nt Basso if I could use a phone to arrange bail. He said no, I was in lockup. I told him I have a constitutional right to make a call to arrange bail, talk to attorney, etc.[...] I am an unsentenced inmate. I need to arrange bail." This form indicates that an investigation was initiated on the same date and Sergeant Basso responded: "Inmate is in the [Lockup]. Policy F–140 states inmates not in good standing will *NOT* be allowed access to the collect call phones located in the dayroom areas. Therefore this does not meet the criteria of a defined grievance." In the section of the form that provides for "Action Taken," Basso checked, "No Action Warranted—Not a Defined Grievance." This notation is dated December 1, 2001. On December 6, 2001, Clukey, without further explanation, checked "Grievance Unfounded" in the section of the form dedicated to recording any administrative review and action.

With respect to the defendants' assertion that Simpson did not appeal the denial of this December 1, 2001, grievance, Simpson argues that the defendants have not proven the negative: that the Department of Corrections did not receive or answer or defer an answer vis-à-vis Simpson's grievance. He cites to paragraphs in his affidavit that state that he

---

**6.** The parties contest this date but the exact date is neither material to the exhaustion question nor the constitutional inquiry.

could not appeal the determination because Clukey had checked the box indicating that the grievance was unfounded. In order to appeal Simpson would have had to ask permission to submit a grievance to a shift leader and because of the characterization of the grievance as nongrievable, unfounded, and frivolous Simpson was denied grievance forms by Basso and two other jail officers. Simpson states that on December 19, 2001, he wrote a letter to the Commissioner of Corrections at the 111 Augusta State House address informing him that he wanted intervention on his behalf. He did not receive a response. Simpson avers that he sent a notarized letter in July 2002 asking for a resolution of this grievance and he has not received a reply. Simpson does not provide any documentation of these appeal efforts beyond a May 26, 2002, grievance form on which Simpson states that from April 30, 2002, onwards he had requested grievance forms three times and been denied the forms and permission to file a grievance. (Pl.'s Reply Mem. Ex 1.) On this form the failure is acknowledged by the jail personnel and the action taken is that Simpson was to be informed that he would be getting the forms. (*Id.*)

As noted above, Simpson submitted two more requests to jail staff. On December 14, 2001, Simpson submitted an inmate request form stating: "I need to buy some cosmetics off the store cart also stamps. I am in lock up and was told to write shift leader." (DMSJ Ex. 3.) The response on the form is: "Stamp request denied—we will provide you with 3 stamps/ week while you are in lock-up—hygiene pack request can be made out and submitted by Thursday of each week. You will have $1 deducted from your account for the hygiene pack if you want a shave card that will be an additional $1. You do not have any access to the store cart for anything while in lock-up. This request is to[o] late for this week." (*Id.*) Simpson did not file a grievance with respect to this request.

On January 6, 2002, Simpson filled out an inmate request form indicating: "I need to use an unmonitored, non-recorded phone line to contact my attorney. My trial starts in approximately 1 week. It is extremely important." (*Id.* Ex. 4.) On the same date Simpson met with his attorney for approximately forty minutes. As a consequence of this person-to-person meeting the jail officers took no further action on the request and the form bears this notation: "Inmate's attorney came and visited him on this date (1–6–02) from 14:30 to 15:10—non-contact." There is a check beside "Reviewed and no action warranted at this time." Simpson did not file a grievance with respect to the January 6, 2002, request.[7]

I conclude that the only claim that Simpson has exhausted is his claim concerning the denial of access to the phone to attempt to make bail, an attempt that commenced on December 1, 2001. Though Simpson has no proof-positive of his efforts to appeal this determination to the Department of Corrections, he does have some proof that his efforts to file grievances (efforts some of which post-date the filing of this action perhaps) were not facilitated by the Jail as required by the policy. After all, exhaustion is an affirmative defense

7. The defendants also state that Simpson's attorney sent Gallant a letter dated December 12, 2001, indicating that Simpson needed access to writing material and the mail for purposes of contacting his attorney and defense witnesses, and also requesting that Simpson be allowed phone access for these purposes. Gallant called the attorney on January 2, 2002, and left a message indicating that Simpson was in disciplinary segregation for three or four months and would not have access to the telephone but that he would have access to writing materials and the mail. She also said that the attorney could visit Simpson during reasonable hours.

and this court has no way of knowing without some presentation by the burden bearer as to the Department of Corrections' record on this matter, whether Simpson has submitted a grievance to the Department. Furthermore, the fact that jail personnel responded that this was not grievable—and they do not back-away from this position in these pleadings—suggests that it is not inequitable to estop them from arguing that Simpson has failed to exhaust. So while I conclude that Simpson has a right to a review of the merits of this claim, the other facets of this action have not been exhausted as required by § 1997e(a). *See Nelson v. Rodas,* 2002 WL 31075804, \*4–6 (S.D.N.Y. Sept. 17, 2002) (examining status of the case law as to whether § 1997e(a) requires dismissal of the entire action if there are exhausted and nonexhausted claims, concluding that dismissing the nonexhausted claims without prejudice and proceeding on the exhausted claim was appropriate given that the parties and the court had already expended considerable resources on the action). With the defendants pressing this defense, these nonexhausted claims cannot be addressed by this court unless I determined that § 1997e(a) did not apply to this action. *Casanova v. Dubois,* 289 F.3d 142, 147 (1st Cir.2002) (remanding case for determination of whether remedies have been exhausted, noting: "Although not jurisdictional the exhaustion requirement is nonetheless mandatory").

## 1. Simpson's § 1997e(a) Status When He Brought this Action and the Unexhausted Claims

The facts material to Simpson's status as a "prisoner" within the meaning of § 1997e(a) are undisputed. Simpson was released from the Penobscot County Jail on January 21, 2002, when he posted bail, only to return on January 26, 2002. He has been in State custody since January 26, 2002, and was housed for sometime at the Maine Correctional Center in South Windham, Maine. Simpson's original complaint and motion to proceed *in forma pauperis* were signed by Simpson on January 16, 2002, and a jail officer signed the certificate on the *in forma pauperis* form on the same date. Simpson represented in these pleadings that he was incarcerated at the Penobscot County Jail. These pleadings were docketed by the court's clerk on January 23, 2002, a date on which Simpson was on bail and thus not incarcerated at the Penobscot County Jail.

As indicated in the recommended decision on the motion to dismiss, one judge in this District has concluded that the § 1997e(a) exhaustion requirement is not applicable to individuals who have been released from custody during the pendency of the federal action. *See Murphy v. Magnusson,* 1999 WL 615895 (D.Me. 1999) (not requiring § 1997e(a) exhaustion by a former-prisoner plaintiff who had been released from the defendant's custody after the filing of the complaint). Other Circuit Courts of Appeal have reached similar conclusions in addressing former-prisoner status and the exhaustion requirement, *see Ahmed v. Dragovich,* 297 F.3d 201, 210 (3d Cir.2002); *Greig v. Goord,* 169 F.3d 165, 167 (2d Cir.1999), and other limitations placed on prisoner suits by the Prison Litigation Reform Act (PLRA), *Janes v. Hernandez,* 215 F.3d 541, 543 (5th Cir.2000) (attorney fee limitation of § 1997e(d)); *Kerr v. Puckett,* 138 F.3d 321, 323 (7th Cir.1998) (mental and emotional injury damages limitation of § 1997e(e)).

Simpson's case is one that requires the court to look again at the question of how changes in the plaintiff's status from prisoner to non-prisoner and back to prisoner impact the exhaustion question. In *Medina–Claudio v. Rodriguez–Mateo,* 292 F.3d 31 (1st Cir.2002) the First Circuit made it clear that the exhaustion require-

ment applied if exhaustion was logistically possible for the plaintiff, even if he was no longer a prisoner at the facility involved in the underlying allegations. *Id.* at 35. Thus, the exhaustion requirement perseveres even when the future plaintiff is removed from the location where the alleged rights violations occurred, ·but remains within the correctional system. Therefore Simpson, who is once again a prisoner in the state penal system, cannot raise continuing violations in the context of this lawsuit without exhausting his administrative grievances.[8]

In terms of timing, section 1997e(a) clearly anticipates exhaustion *prior* to the bringing of a federal suit, starting as is does with the phrase, "No action shall be brought...." Thus, pragmatically speaking, the appropriate window for Simpson in terms of the exhaustion of his remedies would have been prior to January 16, 2002, when he completed and signed his paperwork for this suit. I conclude that what Simpson could have done to exhaust his administrative remedies *after* he filed this suit does not seem to be the appropriate point of reference; rather it is his ability to exhaust remedies prior to the commencement of the action that must be determined.[9]

■ From the record in front of me it appears likely that Simpson mailed his complaint on or soon after January 16, 2002, from the Penobscot County Jail. Clearly he prepared and signed the filings by January 16, and the record indicates that he sent one legal letter on January 17, 2002. (DMSJ Ex. 6.) The First Circuit Court of Appeals has recently definitively adopted the "prisoner mail box" rule for purposes of determining when a prisoner's § 1983 pleading is "filed" for statute of limitations purposes. *Casanova,* at 79 ("[We] hold that the mailbox rule shall govern the determination of when a prisoner's § 1983 filing has been completed. So long as the prisoner complies with the prison's procedures for sending legal mail, the filing date for purposes of assessing compliance with the statute of limitations will be the date on which the prisoner commits the mail to the custody of prison authorities.")[10] Whether this action was "brought" within the meaning of § 1997e(a) when it was "filed" on January 17, 2002, or when it was docketed in this court on January 23, 2002, is not determi-

---

8. This is not a situation such as I confronted in *Dennison v. Prison Health Services,* 2001 WL 761218, *2–3 (D.Me.2001). That plaintiff was a prisoner at the time of filing but was released entirely from custody during the pendency of her suit. I concluded that the § 1997e(a) concern was mooted by her release. Because *Dennison* raised an acute concern about the judicial efficiency of dismissing the complaint merely to see it re-filed shed of the § 1997e(a) requirement, I found the pragmatic approach advocated in a concurrence and dissenting opinion in an Eleventh Circuit case to be persuasive. *See Harris v. Garner,* 216 F.3d 970, 985–86 (11th Cir. 2000) (Anderson, J., concurring; Tjoflat, J., concurring in part and dissenting in part). Nothing that has happened since my opinion in *Dennison* has changed my view that the problem of exhaustion under § 1997e(a) has to be approached with common sense.

9. I reject the defendants' argument that the date on which Simpson accomplished service on the defendants, April 5, 2002, should be determinative.

10. It is not clear whether the First Circuit would conclude that what is good for the common goose (a prisoner-favorable statute of limitations calculation) is good for the rare gander (a prisoner-adverse "filing" date for a § 1997e(a) determination). *See also Morales–Rivera v. United States,* 184 F.3d 109, 109 (1st Cir.1999) ("We hold that a *pro se* prisoner's motion under 28 U.S.C. § 2255 or § 2254 is filed on the date that it is deposited in the prison's internal mail-system for forwarding to the district court, provided that the prisoner utilizes, if available, the prison's system for recording legal mail.").

native because the record now definitively establishes that although Simpson posted bail on January 21, 2002, he was reincarcerated on January 26, 2002, and remains in custody. Thus, unlike a former-prisoner plaintiff, Simpson would be subject to the strictures of § 1997e(a) if the court dismissed the action without prejudice; he would need to administratively exhaust each claim before bringing it to this forum.

For a provision that is meant to lift some of the burden of prisoner litigation from the shoulders of the federal trial courts, section 1997e(a) has proven to be a prickly piece of legislation to apply given the variegations in the status of plaintiffs. *See Rodriguez v. Ghoslaw,* 2002 WL 1424586, *1 (S.D.N.Y.2002) ("Legislative and judicial efforts to reduce the burden of prison litigation on the district courts by creating procedural obstacles to prisoners' suits can sometimes have perverse effects."). In the present case Simpson has brought not only a claim that he was denied access to a phone to make bail arrangements, but he has also alleged that the jail's policy and procedures have limited his access to the courts by denying him the opportunity to consult with his attorney and the witnesses necessary for his trial. Those claims have not been the subject of any administrative grievances that I can discern. Though the wisdom of the strategy might be questioned in light of the summary judgment record before me, defendants continue to press for dismissal on that basis. *Id.* at *3 ("Defendant could have chosen to expressly waive the non-exhaustion issue and move instead for restoration of the summary judgment in his favor on the merits. Instead, he seeks a dismissal without prejudice. Under the PLRA, he is entitled to that remedy. Accordingly, the plaintiff's claim

against defendant . . . is dismissed without prejudice to future litigation on the same cause of action after exhaustion of any available administrative remedies."). They are entitled to that result under the PLRA.

### 2. *The Exhausted Constitutional Claim*

The facts material to the denial of Simpson's request to make a collect call while in disciplinary segregation are as follows. Simpson was booked into the Penobscot County Jail on September 26, 2001, on charges of robbery and terrorizing. All inmates who are booked into the Jail are allowed two unmonitored telephone calls after the booking process has been completed. Simpson was in the maximum security population from September 26, 2001, through, at least, October 20, 2001. During this period Simpson had access to collect call phones located in the day room of his cell block.

Simpson was placed in disciplinary segregation initially because he refused to obey an order issued by a correctional officer. Subsequently the Jail extended his disciplinary segregation (running until his release on bail on January 21, 2002) based on a series of subsequent disciplinary charges including: tampering or blocking a locking device; refusing to comply with an order; destroying, altering, or damaging jail property; lock tampering and leaving his cell during lock-down; placing a trash can full of water and feces on a TV stand; refusing to obey an order from a correctional officer; defecating on a piece of paper in front of his door; threatening a corrections officer; possession of contraband; and interference with an officer in the performance of his duties. (Gallant Aff. ¶ 9; Defs.' Reply to PMSJ Ex. A.) [11]

11. Simpson objected and moved to strike the statement of material fact containing the chronological sequence of these disciplinary

infractions. (DFSM ¶ 7; Pl.'s Reply SMF ¶ 7.) In their reply to Simpson's response the

An inmate who violates the jail rules and is placed in disciplinary segregation is an inmate not in good standing. Inmates not in good standing are placed in disciplinary segregation and are subjected to restrictions including limitation on their telephone access. Pursuant to Penobscot County Jail Policy F–140, which covers inmate use of telephones, an inmate not in good standing will not be allowed access to collect call phones except as authorized by the shift supervisor or designee for a bona fide reason. Routine lawyer calls do not constitute a bona fide reason.

With respect to alternative means of communication, inmates in disciplinary segregation are allowed postage for three personal one-ounce first-class letters each week and they have unlimited writing supplies and postage for the purposes of corresponding with attorneys, courts, or grievance review representatives. They can meet with their attorneys at any time subject to reasonable hour restrictions; these are restrictions that primarily require that the attorney not seek to meet with their client at the time when the inmates are sleeping, eating, or during a formal headcount. The intake log kept by the Jail staff shows that Simpson was allowed to meet with his attorney on October 22, 2001; October 28, 2001; November 2, 2001; January 6; 2002; January 8, 2002; January 15, 2002; and January 21, 2002.

Simpson made one request to make a call to arrange bail on December 1, 2001. This request was denied, as described above in the discussion of exhaustion. Simpson asked the jail administrators to provide his associate's address for Simpson and they refused. The defendants assert that Simpson could have met with his attorney on any date that he was incarcerated in the Jail between September 26, 2001, and January 21, 2002. Simpson retorts that he could not arrange visits with his attorney on any day because he was denied phone calls to his attorney.

Simpson's claim concerning interference with his ability to post bail falls under the Fourteenth Amendment umbrella that protects Simpson's right to "post-arrest procedural guarantees" such as bail. *See Brady v. Dill*, 187 F.3d 104, 108 (1st Cir.1999). Simpson's plaint concerning the Jail's policy of denying access to the collect phone can also be characterized as a condition of pretrial detention claim under *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Therein the Supreme Court stated:

> [I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissi-

---

defendants have provided a sheath of reports. (Def's Reply Ex. A.)

Simpson's rumblings about the disciplinary proceedings and his contention that the Gallant affidavit does not support the statement because she had no personal knowledge of the hearings does not, by any stretch, generate a due process challenge to these charges. Though Simpson argues with the defendants' characterization of the disciplinary process, including whether or not he received a copy of his denied grievance in a timely fashion, Simpson clearly has not and cannot contest the validity of these determinations on due process grounds in this action. *See Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997); *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). The relevance is limited to the fact that Simpson was in disciplinary segregation for what the jail perceived to be a series of disciplinary infractions and, as framed in this case, a determination that the denial of access to bail claim was valid would not imply the invalidity of those disciplinary determinations.

bly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees. Courts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility.

441 U.S. at 539, 99 S.Ct. 1861 (footnotes and citations omitted). The concern underlying *Bell* is that the challenged conditions are not "imposed to sanction prior unproven criminal conduct," but are "imposed to enforce reasonable prison disciplinary requirements." *Collazo–Leon v. United States Bureau of Prisons,* 51 F.3d 315, 318 (1st Cir.1995).

█ It is undisputed that Simpson was given access to two unmonitored calls when he first arrived at the jail in September 2001. It is also undisputed that he had ample access to the phone prior to his October disciplinary segregation. Even after his disciplinary segregation he had the ability to use the mail to reach individuals to help him arrange bail. He also had unlimited ability to send legal mail. Though Simpson argues that the jail officials were unwilling to help him find an address for his associate (making the phone his only recourse to his associate) this refusal to track down an address is not of Constitutional magnitude on its own. The extra delay of relying on the mail to contact his attorney or someone who could do some leg work for him, after Simpson had at least a month prior to his segregation where his phone access was not restricted, does not make this an unreasonable alternative to the phone and is

an adequate safeguard of Simpson's right to arrange bail. *See cf. Turner v. Safley,* 482 U.S. 78, 88, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) (observing, in a First Amendment context, that the availability of alternative method of communication was relevant to determining the scope of the burden imposed by the challenged regulation).

I also note that Simpson filed one grievance with respect to his need to use the phone to arrange bail. Though the rebuff he received could give an inmate pause about the utility of pressing the matter, the record indicates that Simpson attempted no other avenues of either getting the Jail to allow him access to the phone by providing it with concrete information of how the call was going to allow him to make bail or attempting an alternative method of making the necessary contact beyond the request for his associate's address.[12] The record demonstrates that Simpson was able to meet with his attorney and send mail to him and others; surely others were as capable of helping Simpson locate the address as were the jail administrators. I do not mean to suggest by this analysis that the jail staff had no obligation to respond to Simpson's bail request because he had been unable to make bail initially or because he was in disciplinary segregation. A pretrial detainee's status vis-à-vis ability to post bail can change as a case unfolds and the Jail, given the right set of facts, could find itself confronting a deprivation of constitutional significance if its staff failed to take care to recognize the bona fide nature of bail requests, separate and distinct from routine contact with counsel. These facts do not present that circumstance.

---

**12.** Though the allegations of Simpson's complaint concerning access to the phone, mails, and his attorney, taken together supported a claim that the defendant's conduct interfered with his access to courts, this single episode does not support an access to court claim distinct from the analysis conferred here. His other generalized allegations have fallen by the wayside because he failed to exhaust the administrative procedure.

With respect to *Bell* I must gauge whether the restriction or condition was "reasonably related to a legitimate goal" or, conversely, whether it was "arbitrary or purposeless." *Bell,* 441 U.S. at 539, 99 S.Ct. 1861. First I examine whether the denial of Simpson's request for a call on December 1, 2001, was done with an express intent to punish Simpson. *See id.; see also Valdez v. Rosenbaum,* 302 F.3d 1039, 1045–46 (9th Cir.2002). The defendants' initiated no action towards Simpson; rather they were reacting to his request. The denial of Simpson's request was pursuant to a policy that prohibited access to the phone for inmates not in good standing. The determination that Simpson's was not a bona fide reason to depart from this prohibition does not support a conclusion that the denial of Simpson's request for a call on December 1, 2001, was done with an express intent to punish Simpson. *See Bell,* 441 U.S. at 539, 99 S.Ct. 1861; *see also Valdez v. Rosenbaum,* 302 F.3d 1039, 1045–46 (9th Cir.2002).

I must also consider whether a punitive intent can be inferred from the denial. *Bell,* 441 U.S. at 538–39, 99 S.Ct. 1861. Here I ask " 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].' " *Id.* at 538, 99 S.Ct. 1861 (quoting *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963)). The purposes assigned to the denial of the request is that Simpson was in disciplinary segregation because of disorderly conduct including more than one incident of tampering with his door so as to release himself from lock-up (with one of these door tampering incidents occurring on December 1, 2001, the day of Simpson's phone call request.) He was also alleged to have been disobeying orders, threatening, and obstructing jail personnel. Simpson was considered a security risk. Not giving Simpson the special permission he needed under the jail policies to make the phone call is rationally related to minimizing the risk to Jail security. The single denial, particularly in light of the other avenues of communication left open to Simpson, was not excessive in relation to the defendants' justification.

Simpson also stresses that the defendants have admitted that the phone policy/denial of request was partially punitive, aimed at sanctioning Simpson (and presumably other inmates not in good standing) for disorderly behavior. Simpson confuses the notion of punishment of a pretrial detainee *for* the unproven criminal conduct which is the basis for the detention with the notion of punishment for misconduct in the facility. The former is constitutionally impermissible; the latter is not, so long as the "particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective." *Bell,* 441 U.S. at 539, 99 S.Ct. 1861; *see also Turner,* 482 U.S. at 89, 107 S.Ct. 2254 ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.... Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration."). As indicated above I conclude that Simpson has failed to come forward with sufficient evidence to generate a trialworthy issue on this claim and summary judgment for the defendants is warranted. *In re Spigel,* 260 F.3d at 31.

### Conclusion

For the reasons set forth above, I hereby **GRANT** the defendants summary judgment on Simpson's denial of access to the telephone to make bail claim and **DENY**

Simpson summary judgment on that same claim. Simpson's remaining claims are **DISMISSED WITHOUT PREJUDICE.**

*So ordered.*