Pantera ORNELAS, Plaintiff,

v.

**G J GIURBINO, et al., Defendants.**

**No. 03 CV 1673–BEN(WMc).**

United States District Court,
S.D. California.

Feb. 14, 2005.

Richard F. Wolfe, Deputy Attorney General, Office of the Attorney General, San Diego, CA, for defendants.

**958**

## ORDER ADOPTING REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS (Docket No. 15)

BENITEZ, District Judge.

### I.

### *INTRODUCTION.*

PANTERA ORNELAS, ("Plaintiff"), an inmate at Centinela State Prison, has filed an action *pro se* under 42 *U.S.C.* § 1983, alleging violation of his civil rights. Specifically, he alleges he was denied freedom from cruel and unusual punishment, due process, and access to the courts. (First Amended Complaint at 5–11). Defendants moved to dismiss. The Honorable Magistrate Judge William McCurine Jr. issued a Report and Recommendation, recommending the case be dismissed for failure to exhaust administrative remedies. Plaintiff filed objections to the Report and Recommendation. The Court has made a *de novo* review of the Report and Recommendation. *See,* 28 *U.S.C.* § 636(b). For the reasons set forth below, the Court adopts the Report and Recommendation, and orders the Complaint be dismissed in its entirety without prejudice and without leave to amend for Plaintiff's failure to fully exhaust his administrative remedies.

### II.

### *FACTUAL AND PROCEDURAL BACKGROUND.*[1]

On April 16, 2002, Plaintiff was incarcerated at Centinela State Prison. On April 16, 2002, Plaintiff claims that Correctional Officer Angulo violated his constitutional rights "when he engaged in unlawful sexual misconduct and harassment when he attempted to solicit sexual favors from Plaintiff in return for special consideration of the scheduling of a Biannual Hearing and by gropping (*sic.*) his genitals in front of me while stating he could 'hook me up.'" (First Amended Complaint at 9). Specifically, Plaintiff alleges that, after he obtained permission to enter Defendant Angulo's office, he asked Defendant Angulo about a possible Biannual Hearing so that Plaintiff could petition for transfer. *Id.* Plaintiff then asked Defendant Angulo if he could "hook him up", allegedly referencing the hearing. *Id.* Defendant Angulo then began to "grab and fondle his genital area while stating 'Yeah I'll hook you up.'" *Id.* Plaintiff understood this action by the Defendant to be a sexual overture by Defendant Angulo, "proposing a sexual act in return for a favorable biannual hearing." *Id.*

On August 21, 2003, Plaintiff filed this civil rights action pursuant to 42 *U.S.C.* § 1983. The Court granted Plaintiff leave to proceed in *forma pauperis*, and simultaneously screened the Complaint in order to make a preliminary determination as to whether the Complaint required *sua sponte* dismissal on grounds that it was frivolous, malicious, failed to state a claim, or sought monetary damages against defendants who were immune. *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b); *Lopez v. Smith,* 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (§ 1915A). Finding *sua*

---

1. The facts are substantially taken from the Court's records and the Magistrate Judge's Report. Where appropriate, direct citations to the record will be provided. "The court may ... assume the correctness of that portion of the proposed findings of fact to which no objection has been made ...." *Coleman v. Wilson,* 912 F.Supp. 1282, 1297 (E.D.Cal. 1995); *see also, U.S. v. Remsing,* 874 F.2d 614, 617 (9th Cir.1989) ("If neither party contests the magistrate's proposed findings of fact, the court may assume their correctness and decide the motion on the applicable law.").

*sponte* dismissal of the Complaint appropriate, the Court dismissed the Complaint without prejudice for failing to state a claim upon which relief could be granted under 28 *U.S.C.* §§ 1915(e)(2)(b)(ii) and 1915A(b)(1).

On November 17, 2003, Plaintiff filed his First Amended Complaint. On December 22, 2003, the Court directed the U.S. Marshal to effect service.

On March 15, 2004, Defendants Angulo, Giurbino, Stokes, Hudson, Garcia, and Trout moved to dismiss under FED.R.CIV.P. 12(b) and FED.R.CIV.P. 12(b)(6). Plaintiff filed his Opposition on April 27, 2004, and Defendants filed their Reply on May 4, 2004. On June 29, 2004, Judge McCurine issued his Report and Recommendation on Defendants' Motion. Plaintiff filed his objections on July 30, 2004 and Defendants filed their Reply on August 12, 2004.

## III.

### *STANDARD OF REVIEW.*

The district court's role in reviewing a Magistrate Judge's report and recommendation is set forth in 28 U.S.C. § 636(b)(1). Under this statute, the district court "shall make a *de novo* determination of those portions of the report … to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." *Id.*

## IV.

### *PLAINTIFF HAS FAILED TO FULLY EXHAUST HIS ADMINISTRATIVE REMEDIES.*

Defendants Giurbino, Stokes, Hudson, Garcia and Trout claim, as to them, Plaintiff has failed to exhaust his administrative remedies as required under 42 *U.S.C.* § 1997e(a). The Court agrees.

■ At the outset, Defendants properly move to dismiss under the "non-enu-merated" provisions of FED.R.CIV.P. 12(b). *See Ritza v. Int'l Longshoremen's & Warehousemen's Union,* 837 F.2d 365, 368–69 (9th Cir.1988); *Wyatt v. Terhune,* 315 F.3d 1108, 1119 (9th Cir.2003) (finding a non-enumerated motion under Rule 12(b) to be "the proper pretrial motion for establishing nonexhaustion" of administrative remedies under 42 U.S.C. § 1997e(a)). *Wyatt* holds that non-exhaustion of administrative remedies as set forth in 42 U.S.C. § 1997e(a) is a defense which defendant prison officials have the burden of raising and proving. *Wyatt,* 315 F.3d at 1117–19. However, unlike under Rule 12(b)(6), "[i]n deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Id.* at 1119–20 (citing *Ritza,* 837 F.2d at 369).

■ Turning to the issue of exhaustion, under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 … by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 *U.S.C.* § 1997e(a). "Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory." *Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Plaintiff's available remedies must be exhausted before a complaint under section 1983 may be entertained, "regardless of the relief offered through administrative procedures." *Booth v. Churner,* 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).

The State of California provides its prisoners and parolees the right to administratively appeal "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." CAL. CODE REGS., tit. 15,

§ 3084.1(a). "In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections." *Barry v. Ratelle,* 985 F.Supp. 1235, 1237 (S.D.Cal.1997). The third or "Director's Level" of review "shall be final and exhausts all administrative remedies available in the Department [of Corrections.]" *See* Cal. Dep't of Corrections Operations Manual, § 54100.11, "Levels of Review"; *Irvin v. Zamora,* 161 F.Supp.2d 1125, 1129 (S.D.Cal.2001).

There is no question that Plaintiff is aware of the exhaustion requirement. Indeed, Plaintiff generally complied with the requirements of Section 3084 and obtained a Director's Level of review. There is adequate evidence that all administrative remedies were exhausted as to the Eighth Amendment claim against Defendant Angulo. Plaintiff submitted a 602 with Log No. CEN 02–0805 detailing the incident and describing the conduct of Defendant Angulo. A Director's Level decision was made regarding this 602 on January 7, 2003. *See* Mot. to Dismiss Ex. A. However, Defendants were not named in Plaintiff's 602, a form that is required to initiate the appeal process. *See* Cal. Dep't. of Corrections Operations Manual, § 54100.11. As such, Defendants claim, it is temporally impossible for Plaintiff to have intended grievances against them, as all claims alleged against them occurred after the 602 filing. *See* Reply at 2.

In opposition, Plaintiff claims that these Defendants were on notice of his 602 and that "the additional filing of separate and successive appeals stemming from the same issue or problem is viewed within the CDC as an abuse of the Appellate system."

*See* Opp'n at 1. However, Judge McCurine found that there is no rule against filing "separate and successive" grievances, and that "abuse of the grievance system consists of 'submission of more than one non-emergency appeal within a seven-calendar day period' ". *See* Report and Recommendation at 969.

In finding that Plaintiff has not exhausted administrative remedies as to Giurbino, Stokes, Hudson, Garcia and Trout, Judge McCurine also thoroughly analyzed the applicable authorities. For example, Judge McCurine addressed *Irvin v. Zamora,* 161 F.Supp.2d 1125, 1130–32 (S.D.Cal.2001). The inmate in *Irvin* alleged he was exposed to pesticide. *Id.* at 1133. He "pursued two separate grievances to the Director's Level that revolve around the pesticide incident." *Id.* The *Irvin* plaintiff did "not specifically name defendants" that were allegedly involved in the incident "in either of his grievances or in his responses at the various levels of review." *Id.* at 1134. The Court, however, held that plaintiff's grievances were "sufficient under the circumstances to put the prison on notice of the potential claims and to fulfill the basic purposes of the exhaustion requirement." *Id.* at 1135. The court specifically found that:

plaintiff's grievances did present the relevant factual circumstances giving rise to a potential claim and did request the identities of the individuals directly responsible for spraying the pesticide. This was sufficient to put prison officials on notice of possible problems with these individuals. Plaintiff also requested that the prison conduct an investigation of the facts. As a result, the facts were investigated and developed, and the prison had an opportunity to exercise its discretion or correct any errors as appropriate under the circumstances. In other words, plaintiff's grievances were sufficient under the circumstances

to put the prison on notice of the potential claims and to fulfill the basic purposes of the exhaustion requirement. *Id.* at 1134.

Plaintiff's case here is different. As Judge McCurine found "[t]his Court cannot apply the broad principle adopted in *Irvin* to say that the Defendants not named in the 602 who reviewed Plaintiff's appeals or subjected Plaintiff to continuous lawful searches were put on notice of the potential claims against them. Therefore, the 602 filed on April 17, 2002 was insufficient to initiate the administrative grievance process against Defendants Giurbino, Stokes, Hudson, Garcia, and Trout." *See* R & R at 968.

Similarly, in *Nichols v. Logan,* 355 F.Supp.2d 1155 (S.D.Cal.2004), this Court refused to extend *Irvin,* holding that exhaustion was not satisfied where plaintiff failed to mention defendants in his 602 filing. *Id.* at 1162–64. In *Logan,* like here, plaintiff named defendant Logan in his 602 but failed to mention other defendants—Houston, Leapheart, Corona, Borem and Settlemire. And, Plaintiff's 602 filing was based only on Defendant Logan's alleged misconduct. Against this backdrop, this Court held that we "cannot apply the broad principle adopted in *Irvin* to say that the remaining Defendants who were merely supervisors and not present during the incident would have been put on notice of the potential claims against them." *Id.* at 1163.

Plaintiff makes no plausible argument as to why *Irvin* should be extended to his situation, or that his situation is materially any different than the plaintiff in *Nichols.* All complaints against the unnamed Defendants involved alleged action occurring after Plaintiff's 602 filing. This made it temporally impossible for these Defendants to become aware of any grievance against them. Furthermore, nowhere in his First Amended Complaint, or his Ob-

jections, did Plaintiff submit any documentation or evidence that this claim had been considered by CDC officials at any level of administrative review as to the Defendants in question. Therefore, Plaintiff has failed to exhaust all administrative remedies.

▉ Administrative remedies must be exhausted before filing the action; it is not enough to file a grievance during the course of litigation. *See, McKinney v. Carey,* 311 F.3d 1198 (9th Cir.2002); *see also, Booth,* 532 U.S. at 738, 121 S.Ct. 1819 ("The 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained."); *Neal v. Goord,* 267 F.3d 116, 123 (2d Cir.2001) ("[A]llowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court."); *Freeman v. Francis,* 196 F.3d 641, 645 (6th Cir.1999) ("The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit."). Rather, Plaintiff must file a new action once his administrative remedies have been exhausted. *See, McKinney v. Carey,* 311 F.3d at 1200 ("Requiring dismissal without prejudice when there is no pre-suit exhaustion provides a strong incentive that will further these Congressional objectives; permitting exhaustion *pendente lite* will inevitably undermine attainment of them.").

▉ Also, because Plaintiff's claims have not been exhausted as to Defendants Giurbino, Stokes, Hudson, Garcia and Trout, Plaintiffs presents both exhausted and unexhausted claims, *i.e.,* a mixed Complaint. While the Ninth Circuit has not yet addressed the issue of whether "total exhaustion" of a mixed complaint is required by the PLRA, several district courts have. One of the most recent cases from within the Ninth Circuit is *Mubarak*

*v. California Department of Corrections,* 315 F.Supp.2d 1057 (S.D.Cal.2004) (Sabraw, J.); *see also, Graves v. Norris,* 218 F.3d 884, 885 (8th Cir.2000) ("plain language of § 1997e(a) requires that all available prison grievance remedies must be exhausted as to all of the claims."); *Ross v. County of Bernalillo,* 365 F.3d 1181 (10th Cir.2004) ("We agree that the PLRA contains a total exhaustion requirement, and hold that the presence of unexhausted claims in [plaintiff's] complaint required the district court to dismiss his action in its entirety without prejudice."). *Mubarak* recognized the divergence of opinions but adopted the "total exhaustion" approach. A total exhaustion approach, in addition to the sound reasons set forth in *Mubarak,* would prevent Plaintiff from litigating his claims piecemeal. For example, if the case were to continue against Angulo only, the non-exhausted Defendants—Giurbino, Stokes, Hudson, Garcia and Trout—likely would have to appear as witnesses. Later when administrative remedies were exhausted against these Defendants, and the case against them went to trial, Angulo would have to appear as a witness and give the same testimony offered at the first trial. In the same way, any other percipient or expert witnesses who were called to testify at the first trial would again have to testify at the second trial. Two sets of jurors would be called; two judges would preside; two courtrooms would be unavailable for other matters; justice would be ill-served. Litigants might even purposely file mixed complaints with the intention of multiplying litigation. Rather than support multiplicitous piecemeal litigation of prisoner claims of wrongdoing, this Court also follows the total exhaustion approach of *Mubarak. Id.* at 1061 ("this Court adopts the 'total exhaustion' approach ... Because Plaintiff's third claim is unexhausted, the entire action is dismissed without prejudice").

Requiring total exhaustion will also afford prison officials full opportunity to address prisoners' claims before they are raised in a federal court. By making total exhaustion the standard, federal courts will not only promote comity, but will reap the benefits of more focused complaints and more developed evidentiary records. *See, McKinney,* 311 F.3d at 1200 ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."). Similarly, the requirement that a prisoner file a grievance against the person he ultimately seeks to sue does not impose an unduly heightened pleading requirement upon would-be Section 1983 plaintiffs. It only assures, as envisioned under the PLRA, that the prison administrative system has a chance to deal with claims against prison personnel before those complaints reach federal court. Therefore, since the Court determines claims against some of the Defendants must be dismissed for failing to exhaust his administrative remedies *before* filing the suit, the Court must dismiss the entire First Amended Complaint. The dismissal, however, is without prejudice. Thus, Plaintiff may re-file a new action after Section 1997e(a) has been satisfied, that is after Plaintiff exhausts his administrative remedies as to all Defendants and any and all claims raised against them. *See McKinney v. Carey,* 311 F.3d at 1200.

Accordingly, the Court adopts Judge McCurine's recommendation and dismisses the Complaint in its entirety without leave to amend. Since the action is dismissed without leave to amend, the Court need not reach any other recommendations concerning dismissal. Nevertheless, the Court will address some grounds raised in Defendants' Motion to apprize Plaintiff of

the deficiency of his claims should he refile his action after total exhaustion.

## V.

### PLAINTIFF FAILS TO STATE A CLAIM AGAINST DEFENDANT ANGULO FOR SEXUAL MISCONDUCT.

■■■ Plaintiff cannot state an Eight Amendment claim on alleged verbal sexual harassment. *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir.2004) ("Although prisoners have a right to be free from sexual abuse, whether at the hands of fellow inmates or prison guards, the Eight Amendment's protections do not necessarily extend to mere verbal sexual harassment.") (Citations omitted). Specifically, "[a]lthough the Ninth Circuit has recognized that sexual harassment may constitute a cognizable claim for an Eight Amendment violation, the Court has specifically differentiated between sexual harassment that involves verbal abuse and that which involves allegations of physical assault, finding the later to be in violation of the constitution." *Minifield v. Butikofer*, 298 F.Supp.2d 900, 904 (2004) (citing *Schwenk v. Hartford*, 204 F.3d 1187, 1198 (9th Cir. 2000)). Here, by Plaintiff's own admissions, Angulo did not touch Plaintiff. *See* Opp'n to R & R at 5 ("... although the Defendant did not actually place his hands upon the Plaintiff"). Moreover, "to prevail on a constitutional claim of sexual harassment, an inmate must ... prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir.1997), citing *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Plaintiff makes no such allegations. For example, in *Boddie v. Schnieder*, 105 F.3d 857 (2nd Cir. 1997), even where an inmate was actually touched and grabbed, the court found that these acts still were not enough to constitute a violation of his Eighth Amendment rights. Similarly, in *Adkins v. Rodriguez*, 59 F.3d 1034 (10th Cir.1995), where there were solely sexual verbal comments, there was also no violation found. That inmate argued that implicit to the verbal harassment was a threat tantamount to assault, *i.e.*, "force." The court disagreed. Against this backdrop, Plaintiff fails to state a claim under the Eighth Amendment for alleged sexual verbal harassment.

■■■ Plaintiff argues that the "requirement of physical injury does nothing more then to protect the officers from possible and potential litigation for their unlawful actions." *See* Opp'n to R & R at 5. While Plaintiff refers to *Cal.Code Regs.* Title 15 § 3401.5, defining employee sexual misconduct, and *Cal.Penal Code* § 422.6(a), discussing a Constitutional right to be free from force or threat, Plaintiff fails to present any authority in support of his claim that a physical injury requirement should not apply to Eight Amendment violations. *See* Opp'n to R & R at 6–7. As such, this Court finds Plaintiff's argument to be without merit. In short, verbal sexual harassment at the level Plaintiff allegedly suffered is insufficient to establish conduct amounting to cruel and unusual punishment. Therefore, the Court agrees with Judge McCurine's recommendation to dismiss Plaintiff's claim of sexual misconduct. *See United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) ("[Section 636(b)(1)] permit[s] whatever reliance a district judge, in the exercise of sound judicial discretion, [chooses]

to place on a magistrate's proposed findings and recommendations.").

## VI.

### PLAINTIFF FAILS TO STATE A CLAIM AGAINST DEFENDANT ANGULO FOR VERBAL HARASSMENT.

Judge McCurine found that threats or verbal insults do not constitute a Constitutional violation. *See* R & R at 970. The Court agrees.

■■■ Plaintiff claims that Defendant Angulo verbally harassed him. *See* FAC at 10. "Verbal harassment does not give rise to a constitutional violation enforceable under Section 1983." *Prisoners' Legal Ass'n v. Roberson,* 822 F.Supp. 185, 189 (D.N.J.1993); *see also Keenan v. Hall,* 83 F.3d 1083, 1092 (9th Cir.1996)("[V]erbal harassment generally does not violate the Eighth Amendment."); *Murray v. Woodburn,* 809 F.Supp. 383 (E.D.Pa.1993) ("Mean [verbal] harassment of the sort alleged by [plaintiff] is insufficient to state a constitutional deprivation."). As such, Plaintiff's claim against Angulo for verbal harassment is dismissed.

## VII.

### CONCLUSION.

Plaintiff has failed to fully exhaust his administrative remedies. Thus, his First Amended Complaint is dismissed without prejudice and without leave to amend. Plaintiff may re-file his action once he has fully exhausted his administrative remedies as to all claims against all defendants. Plaintiff's First Amended Complaint is **DISMISSED** without prejudice in its entirety. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

MCCURINE, United States Magistrate Judge.

This Report and Recommendation is submitted to United States District Judge M. James Lorenz, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.3 of the United States District Court for the Southern District of California.

### I.

### PROCEEDINGS

On August 21, 2003, Pantera Ornelas ("Plaintiff"), a California state prisoner incarcerated at Centinela State Prison in Imperial, California, filed this civil rights action pursuant to 42 U.S.C. § 1983. The district judge granted Plaintiff leave to proceed *in forma pauperis* ("IFP"), and simultaneously screened the Complaint in order to make a preliminary determination as to whether the Complaint required *sua sponte* dismissal on grounds that it was frivolous, malicious, failed to state a claim, or sought monetary damages against defendants who were immune. *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b); *Lopez v. Smith,* 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (§ 1915A). Finding *sua sponte* dismissal of the Complaint appropriate, the Court dismissed the Complaint without prejudice for failing to state a claim upon which relief could be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(ii) and 1915A(b)(1).

On November 17, 2003, Plaintiff filed his First Amended Complaint ("FAC") [Doc. No. 4]. On December 22, 2003, the Court directed the U.S. Marshal to effect service of Plaintiff's FAC [Doc. No. 5].

On March 15, 2004, Defendants Angulo, Giurbino, Stokes, Hudson, Garcia, and Trout filed a Motion to Dismiss Plaintiff's First Amended Complaint pursuant to FED.R.CIV.P. 12(b) and FED.R.CIV.P. 12(b)(6) [Doc. No. 15]. Plaintiff filed his Opposition on April 27, 2004, and Defendants filed their Reply on May 4, 2004.

## II.

### PLAINTIFF'S FACTUAL ALLEGATIONS

On April 16, 2002, Plaintiff was incarcerated at Centinela State Prison. *See* FAC at 1. On April 16, 2002, Plaintiff claims that Correctional Officer Angulo violated his constitutional rights "when he engaged in unlawful sexual misconduct and harassment when he attempted to solicit sexual favors from Plaintiff in return for special consideration of the scheduling of a Biannual Hearing and by gropping (*sic.*) his genitals in front of me while stating he could 'hook me up.'" FAC at 9. Specifically, Plaintiff alleges that, after he obtained permission to enter Defendant Angulo's office, he asked Defendant Angulo about a possible Biannual Hearing so that Plaintiff could petition for transfer. *Id.* Plaintiff then asked Defendant Angulo if he could "hook him up", allegedly referencing the hearing. *Id.* Defendant Angulo then began to "grab and fondle his genital area while stating 'Yeah I'll hook you up.'" *Id.* Plaintiff understood this action by the Defendant to be a sexual overture by Defendant Angulo, "proposing a sexual act in return for a favorable biannual hearing." *Id.*

## III.

### DISCUSSION

Defendants Angulo, Giurbino, Stokes, Hudson, Garcia, and Trout move to dismiss Plaintiff's First Amended Complaint pursuant to FED.R.CIV.P. 12(b) and FED. R.CIV.P. 12(b)(6) on the basis that: (1) any claims for damages brought against them in their official capacity are barred by the Eleventh Amendment to the United States Constitution; (2) Plaintiff failed to exhaust all available administrative remedies before filing suit against Defendants Giurbino, Stokes, Hudson, Garcia, and Trout pursuant to 42 U.S.C. § 1997e(a); and (3) Plaintiff failed to state any cognizable Section 1983 claims against any Defendant.

For the following reasons, it is recommended that the Court GRANT the Motion to Dismiss [Doc. No. 15] of Defendants' Giurbino, Stokes, Hudson, Garcia, and Trout without leave to amend.

### A. Failure to Exhaust Administrative Remedies

Defendants Giurbino, Stokes, Hudson, Garcia, and Trout seek dismissal under the "non-enumerated" provisions of FED. R.CIV.P. 12(b) on the ground that Plaintiff failed to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e(a). Before the Prison Litigation Reform Act ("PLRA") was enacted, prisoners challenging the conditions of confinement under 42 U.S.C. § 1983 were not generally required to exhaust administrative remedies before filing suit in district court. *See Patsy v. Bd. of Regents,* 457 U.S. 496, 500–01, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 987, 152 L.Ed.2d 12 (2002).

The PLRA amended 42 U.S.C. § 1997e(a), however, to provide that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any federal law, by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Porter,* 122 S.Ct. at 988, 122 S.Ct. 983; *Wyatt v. Terhune,* 280 F.3d 1238, 1244 (9th Cir.2002). The Supreme Court has called "protecting admin-

istrative agency authority and promoting judicial efficiency" the "twin purposes" of administrative exhaustion. *McCarthy v. Madigan,* 503 U.S. 140, 145, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992); *see also Porter,* 122 S.Ct. at 988, 122 S.Ct. 983 (noting that corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate and thereby obviate the need for litigation, help to filter out frivolous claims and provide the court with an administrative record that clarifies the contours of the controversy) (citing *Booth v. Churner,* 532 U.S. 731, 737, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)).

The Ninth Circuit has held that "failure to exhaust nonjudicial remedies is a matter of abatement" not going to the merits of the case and is properly raised pursuant to a motion to dismiss, including a non-enumerated motion under to FED.R.CIV.P. 12(b). *See Ritza v. Int'l Longshoremen's & Warehousemen's Union,* 837 F.2d 365, 368–69 (9th Cir.1988); *Wyatt v. Terhune,* 315 F.3d 1108, 1120–21 (9th Cir.2003) (finding a non-enumerated motion under Rule 12(b) to be "the proper pretrial motion for establishing nonexhaustion" of administrative remedies under 42 U.S.C. § 1997e(a)). *Wyatt* also holds that nonexhaustion of administrative remedies as set forth in 42 U.S.C. § 1997e(a) is an affirmative defense which defendant prison officials have the burden of raising and proving. *Wyatt,* 315 F.3d at 1120. However, unlike under Rule 12(b)(6), "[i]n deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Id.,* at 1119 (citing *Ritza,* 837 F.2d at 369).

### 1. Administrative Appeals System

The administrative appeals system for inmates in the California prison system is described in Title 15 if the California Code of Regulations. "Any inmate or parolee under the [California Department of Corrections'] jurisdiction may appeal any departmental decision, action, condition, or policy perceived by those individuals as adversely affecting their welfare." CAL. CODE REGS. tit. 15 § 3084.1(a). "In order to exhaust administrative remedies, a prisoner must first attempt to informally resolve the problem with the staff member involved in the action or decision being appealed." *Id.* § 3084.5(a). If unsuccessful, the prisoner must then submit a formal appeal on an inmate appeal form (a "602") to the institution's Appeals Coordinator or Appeals Office. *Id.,* § 3084.5(b). If the prisoner is again unsuccessful, he or she must submit a formal appeal for second level review, *id.,* § 3084.5(c), which is conducted by the institution head or designee. *Id.* § 3084.5(e)(1). The third or "Director's Level" of review "shall be final and exhausts all administrative remedies available in the Department [of Corrections]." *See* Cal. Dep't. of Corrections Operations Manual, § 54100.11, "Levels of Review;" *see also Barry v. Ratelle,* 985 F.Supp. 1235, 1237 (S.D.Cal.1997); *Irvin v. Zamora,* 161 F.Supp.2d 1125, 1129 (S.D.Cal.2001).

In *Booth v. Churner,* 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001), the Supreme Court resolved a split among the Circuits as to whether a state prison grievance procedure which is incapable of providing money damages is "available" under section 1997e(a) and therefore must be exhausted before the prisoner files federal suit under 42 U.S.C. § 1983 seeking those damages. Looking both to the plain language of the statute and to the legislative history behind the PLRA, the Court held the exhaustion of "available" administrative remedies under § 1997e(a) is required in prison condition cases so long as the "prison administrative process [...] could provide some sort of relief on the complaint stated" regardless of whether that

process can provide "the remedial action [the] inmate demands." *Booth,* 532 U.S. at 734, 736, 121 S.Ct. 1819. In other words, no matter the specific "form of relief sought and offered through administrative avenues," the prisoner must exhaust his claims through the existing administrative processes, even if he seeks money damages which are not authorized, so long as those procedures have the "authority to provide any relief" or permit prison officials to take "some action in response to the complaint." *Id.* at 736, 741 nn. 4, 6, 121 S.Ct. 1819.

As noted previously, *Booth* overruled the Ninth Circuit's opinion in *Rumbles v. Hill,* 182 F.3d 1064 (9th Cir.1999) to the extent it held "[e]xhaustion of administrative remedies under section 1997e(a) is not required if a prisoner's section 1983 claim seeks only monetary damages and if the state correctional facility's administrative grievance process does not allow for such an award." *Id.,* at 1069. *Booth* does not address, however, the further holdings in *Rumbles* which remain good law in the Ninth Circuit: (1) that the failure to exhaust under § 1997e(a) does not deprive the federal court of subject matter jurisdiction over the suit, *see Rumbles,* 182 F.3d at 1067–68 (citing *Weinberger v. Salfi,* 422 U.S. 749, 757, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)); *Wyatt,* 280 F.3d at 1244 n. 8; and (2) that § 1997e(a) does not require California prisoners to also exhaust the state notice-of-claim procedures set forth in the California Tort Claims Act (CTCA) with respect to federal constitutional claims alleged under 42 U.S.C. § 1983. *Rumbles,* 182 F.3d at 1069–70. *Booth* applies to Plaintiff's action despite the fact that it was decided *after* Plaintiff initiated suit. *See Harper v. Va. Dep't of Taxation,* 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) (holding that when the Supreme Court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all [civil] cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the] Supreme Court's announcement of the rule."); *Irvin,* 161 F.Supp.2d at 1126 (applying *Booth* to pending cases under *Harper*). Thus, this Court rejects Plaintiff's argument that the precedent established in *Booth* does not apply to his case. *See* Opp'n at 2.

**2. Application to Plaintiff's Case**

Defendants Giurbino, Stokes, Hudson, Garcia, and Trout seek dismissal on the ground that Plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). The use of the 602 Inmate/Parolee Appeal Form is required to initiate the administrative grievance process. *See* CAL. CODE REGS., tit. 15 § 3084.2. The 602 Form limits the prisoner to one paragraph, plus one extra sheet, in which they are directed to frame their "problem." *See id.* § 3084.2(a)(1). Moreover, the 602's format suggests that its purpose is to simply provide a mechanism so that the prisoner can describe the facts giving rise to his grievance from his own perspective; it does not require the prisoner to name "defendants" with particularity, as if he were pleading his case in federal court.

It must be noted, however, that the plain language of the statute makes no reference to the specificity with which the action must be administratively pursued as to individual defendants. *See e.g., United States v. Alvarez–Sanchez,* 511 U.S. 350, 356, 114 S.Ct. 1599, 128 L.Ed.2d 319 (1994) (when interpreting a statute, court must begin with its plain language).

Defendants Giurbino, Stokes, Hudson, Garcia, and Trout claim that Plaintiff never filed any grievances against them. In support of this position, Defendants of-

fered the declaration of N. Grannis, Chief of the Inmate Appeals Branch for the California Department of Corrections, who stated that "all inmate appeals accepted for a Director's level decision are processed through my office, the Inmate Appeals Branch (IAB)," and that "a thorough search by my staff identified no Director's level decisions issued in response to any appeals filed by Inmate Paterna Ornelas (CDC # K–32376) against Giurbino, Stokes, Hudson, Garcia, and/or Trout or Troutt." *See* Decl. at 2–3.

Defendants rely on *Curry v. Scott*, 249 F.3d 493 (6th Cir.2001), in which the Sixth Circuit affirmed a district court's dismissal of a prisoner's failure to preserve his claim against one correctional officer because he was "never mentioned" in the prisoners' grievance against his fellow officers. *Id.* at 497–98, 504–05. However, the Defendants ignore *Irvin v. Zamora*, 161 F.Supp.2d 1125, 1130–32 (S.D.Cal.2001), in which this Court addressed the administrative exhaustion requirements set forth in CAL. CODE REGS., tit. 15 § 3084.5, and specifically declined to adopt *Curry's* heightened administrative grievance pleading requirements. Instead, the Court held that so long as the plaintiff's grievance "present[s] the relevant factual circumstances giving rise to a potential claim" and is "otherwise sufficient to put the prison on notice of the potential claims," the basic purposes of the exhaustion requirement are fulfilled. *Irvin*, 161 F.Supp.2d at 1134–35.

Plaintiff Ornelas does not mention by name Defendants Giurbino, Stokes, Hudson, Garcia, and Trout in his 602 against Angulo (filed on April 17, 2002). Plaintiff contends that Defendant Giurbino, Stokes, Hudson, and Garcia violated his constitutional rights when they failed to take appropriate action to correct the unlawful conduct of Angulo, which they learned about through the administrative appeals process. *See* FAC at 3. Additionally, Plaintiff alleges that Defendant Trout conspired "with other staff members to subject Plaintiff to unlawful harassment in retaliation" for filing a 602 against Defendant Angulo. FAC at 4. Specifically, Plaintiff alleges that Defendant Trout would repeatedly search Plaintiff's person while he was in the yard, allegedly to get Plaintiff to drop the appeal against Defendant Angulo. *See id.* at 11.

Defendants Giurbino, Stokes, Hudson, Garcia, and Trout argue that the events alleged by Plaintiff are acts and omissions that occurred subsequent to the filing of Plaintiff's 602 against Angulo. Thus, "[i]t is temporally impossible for Plaintiff to have included the other Defendants in the 602 against Angulo." Mot. to Dismiss at 5.

This Court cannot apply the broad principle adopted in *Irvin* to say that the Defendants not named in the 602 who reviewed Plaintiff's appeals or subjected Plaintiff to continuous lawful searches were put on notice of the potential claims against them. Therefore, the 602 filed on April 17, 2002 was insufficient to initiate the administrative grievance process against Defendants Giurbino, Stokes, Hudson, Garcia, and Trout.

Plaintiff refutes this argument by stressing that "the additional filing of separate and successive appeals stemming from the same issue or problem is viewed within the CDC as an abuse of the Appellate system." Opp'n at 1. Additionally, Plaintiff notes that "subsequent non-emergency appeals would place a prisoner on restriction for a period of six months from filing any other appeal." *Id.* Plaintiff argues that because each of the Defendants knew of the incident between Plaintiff and Defendant Angulo through the administrative appeals process and "failed to take appropriate measures to correct their misconduct", that each Defendant "had full and fair

warning that their actions might lead to the filing of a Complaint against them." *Id.* at 1–2. Defendants point out, however, that there is no rule against filing "separate and successive" grievances, and that "abuse of the grievance system consists of 'submission of more than one non-emergency appeal within a seven-calendar day period.'" Reply at 2. Therefore, by merely naming Defendant Angulo in his 602, Plaintiff did not exhaust his administrative remedies against Defendants Giurbino, Stokes, Hudson, Garcia, and Trout and they were not put on notice of any grievance against them.

In contrast, there is adequate evidence that all administrative remedies were exhausted as to the Eighth Amendment claim against Defendant Angulo. Plaintiff submitted a 602 with Log No. CEN 02–0805 detailing the incident and describing the conduct of Defendant Angulo. A Director's Level decision was made regarding this 602 on January 7, 2003. *See* Mot. to Dismiss Ex. A.

Therefore, because certain Defendants have properly raised and proven the affirmative defense of non-exhaustion as required by *Wyatt,* it is recommended that Plaintiff's claims against Defendants Giurbino, Stokes, Hudson, Garcia, and Trout be dismissed without prejudice or leave to amend, for failing to exhaust his administrative remedies. *See Wyatt,* 315 F.3d at 1120.

**B. Applicable Legal Standards**

A motion to dismiss for failure to state a claim pursuant to FED.R.CIV.P. 12(b)(6) tests the legal sufficiency of the claims in the complaint. A complaint can be dismissed only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the pleading in the light most favorable to the plaintiff. *NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986); *Parks School of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995).

Unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim, a complaint shall not be dismissed without leave to amend. *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99. Where a plaintiff appears *in propria persona* in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Karim–Panahi v. Los Angeles Police Dep't,* 839 F.2d 621, 623 (9th Cir.1988). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet,* 963 F.2d 1258, 1261 (9th Cir.1992). In giving liberal interpretation to a *pro se* civil rights complaint, however, the court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir.1982).

**1. Eleventh Amendment Immunity**

 Defendants seek dismissal of Plaintiff's damages claims to the extent they are based on acts taken in their official capacities. While the Eleventh Amendment bars a prisoner's section 1983 claims against state actors sued in their official capacities, *Will v. Michigan,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), it does not bar damage actions against state officials in their personal or individual capacities. *Hafer v. Melo,* 502 U.S. 21, 31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Pena v. Gardner,* 976 F.2d 469, 472–73 (9th Cir.1992). When a state actor

is alleged to have violated both federal and state law and is sued for damages under section 1983 in his individual or personal capacity, there is no Eleventh Amendment bar, even if state law provides for indemnification. *Ashker v. California Department of Corrections*, 112 F.3d 392, 395 (9th Cir. 1997). In the FAC, Plaintiff clearly indicates an intent to sue all Defendants in both their individual and official capacities. *See* FAC at 2–3. However, in his Opposition, Plaintiff concedes that Defendants cannot be sued in their official capacities. *See* Opp'n at 4. For the reasons outlined above, Plaintiff does not have leave to pursue claims against the Defendants in their official capacities, and thus it is recommended that the Court GRANT Defendants' Motion to Dismiss with prejudice on Eleventh Amendment grounds to the extent Plaintiff seeks damages against Defendants in their official capacities.

### 2. Cognizable Section 1983 Claims

Plaintiff also asserts claims of sexual misconduct and verbal harassment by Defendant Angulo, physical harassment and retaliation by Defendants Angulo and Trout, denial of access to the courts by Defendants Angulo, Garcia, and Trout, failure to protect by Defendants Giurbino, Stokes, and Hudson. For the reasons outlined below, Plaintiff fails to state a cognizable claim against any of the Defendants.

#### a. Sexual Misconduct

In count five Plaintiff alleges that Defendant Angulo violated his constitutional rights when Defendant Angulo unlawfully engaged in sexual misconduct. *See* FAC at 9. Defendant Angulo seeks dismissal of this claim against him on the ground that Plaintiff failed to state a claim pursuant to FED.R.CIV.P. 12(b)(6). The Ninth Circuit has found that prisoners' claims of cruel and unusual punishment, premised on sexual harassment *not accompanied by touching*, is insufficient to state an Eighth

Amendment claim. *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir.2004)(citing *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir.2000)). In the FAC, Plaintiff clearly outlines the actions of Defendant Angulo. Plaintiff never alleges that Defendant Angulo had any physical conduct, sexual or otherwise with Plaintiff. In fact, Plaintiff alleges that Defendant grabbed his own genitals when speaking to Plaintiff. *See* Opp'n at 5.

Therefore, because there was no physical contact between Plaintiff and Defendant Angulo during the alleged incident, it is recommended that the Court dismiss without leave to amend the Eighth Amendment sexual misconduct claim against Defendant Angulo pursuant to FED.R.CIV.P. 12(b)(6) for failing to state a claim upon which relief can be granted.

#### b. Verbal Harassment

Defendant Angulo also seeks to dismiss the Eighth Amendment verbal harassment claim against him on the ground that Plaintiff failed to state a claim pursuant to FED.R.CIV.P. 12(b)(6). Claims of verbal harassment or abuse of prisoners by guards do not state a constitutional deprivation under 42 U.S.C. § 1983. *Oltarzewski v. Ruggiero*, 830 F.2d 136, 138 (9th Cir.1987); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.1987).

Plaintiff contends that Defendant Angulo tried to "stop me from proceeding with my complaint" and harassed Plaintiff "in an effort to meet those ends." FAC at 10. Again, this Court points out that a threat or exchange of verbal insults does not constitute a deprivation of liberty. *See Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir.1996)(comments by a prison official that denied prisoner "peace of mind" do not state a constitutional claim).

To the extent that Plaintiff alleges he was verbally harassed or threatened by

Defendant Angulo, it is recommended that the Court dismiss without leave to amend those claims against Defendant Angulo pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted.

### c. Retaliation and Physical Harassment

Defendants Angulo and Trout further seek to dismiss the Eighth Amendment retaliation and physical harassment claims against them for failing to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). A plaintiff may bring a claim of retaliation for the exercise of his First Amendment rights under 42 U.S.C. § 1983. *Mt. Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 283–84, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). "A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett v. Centoni,* 31 F.3d 813, 815–16 (9th Cir.1994)(per curiam). Accordingly, a prisoner retains those First Amendment rights that are "not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Prison Legal News v. Cook,* 238 F.3d 1145, 1149 (9th Cir.2001) (internal quotation marks and citations omitted).

■ Plaintiff alleges that after his last conversation with Defendant Angulo, he began having "problems with other staff members on this yard." FAC at 10. Plaintiff claims that he was searched four to five times a day, that his cell would not be opened at the same time as the other inmates, that his job description "changed from a building porter to a school assignment," that his cell was searched twice a day, and that his mail "was being deliberately withheld." *Id.* Plaintiff generally asserts that the motivation behind this treatment was in retaliation for the filing of the 602 against Defendant Angulo and that the actions were "specifically designed to dissuade plaintiff from continuing with his appeal." *See* FAC at 4, Reply at 5.

■ Plaintiff does not allege any facts that suggest the acts by the Defendants were inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Plaintiff claims "there can exist no legitimate penological interests in physically harassing an inmate for attempting to gain redress for an unlawful action." Reply at 5. However, Plaintiff has failed to allege any specific conduct on the part of the Defendants that gives rise to a harassment or retaliation claim. Plaintiff surmises that because Defendant Trout engaged in "numerous stops and searches during a limited period of time without nothing more can only constitute an abuse of his position by using it to harass plaintiff." *Id.* However, a prisoner has no Fourth Amendment right to privacy in his cell, (*see Hudson v. Palmer,* 468 U.S. 517, 525–26, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)) and a prisoner's bodily privacy exists only so far as it is not fundamentally inconsistent with prisoner status or incompatible with the legitimate objectives of incarceration. *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Because Plaintiff has failed to allege any facts that support Defendants' searching of Plaintiff's person was incompatible with the legitimate objectives of the corrections system, it is recommended that the Court dismiss without leave to amend those claims against Defendants Angulo and Trout pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted.

#### d. Access to the Courts

Defendants Garcia, Angulo, and Trout move to dismiss the constitutional violation claims for denying Plaintiff access to the courts on the ground that Plaintiff failed to state a claim pursuant to FED.R.CIV.P. 12(b)(6). Inmates have a constitutional right of access to the courts. *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). The Supreme Court has held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons who are trained in the law." *Id.* at 828, 97 S.Ct. 1491. The Court recently revisited and significantly limited *Bounds* in *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

In *Lewis,* the Arizona Department of Corrections ("ADOC") appealed an injunction imposed by the District Court for the District of Arizona-upheld by the Ninth Circuit-requiring the ADOC to significantly upgrade their law library facilities. Justice Scalia, writing for the majority, reversed because of the failure to find imminent actual injury resultant from the existing conditions. *Id.* at 349–353 & n. 3, 116 S.Ct. 2174. As such, *Lewis,* is a significant reshaping of the right of access to the courts in two respects: the clarification that every such claim must be founded upon actual injury, and the restriction of the scope of the right to only certain types of claims.

■ *Lewis* made clear that actual injury is a "constitutional prerequisite" which not only ensures "serious and adversarial treatment," but also "keeps the courts within certain traditional bounds vis-a-vis the other branches, concrete adverseness or not." *Id.* at 352–53 & n. 3, 116 S.Ct. 2174. Further, the right of access is only guaranteed for certain types of claims: direct and collateral attacks upon a conviction or sentence, and civil rights actions challenging the conditions of confinements. *Id.* at 354, 116 S.Ct. 2174. Even among these types of claims, actual injury will exist only if "a *nonfrivolous* legal claim has been frustrated or was being impeded." *Id.* at 353, 116 S.Ct. 2174 (emphasis added); *id.* at 353 n. 3, 116 S.Ct. 2174.

■ Thus, to state a claim for interference with the right of access to the courts, an inmate must establish that inadequate facilities or interfering regulations have actually frustrated or impeded a nonfrivolous (1) criminal trial or appeal, (2) habeas proceeding, or (3) section 1983 case challenging the condition of his confinement. *Lewis,* 518 U.S. at 355, 116 S.Ct. 2174; *Sands v. Lewis,* 886 F.2d 1166, 1171 (9th Cir.1989).

■ Here, Plaintiff has failed to provide any evidence that he has been denied the access to the courts guaranteed by *Bounds* and *Lewis.* Plaintiff alleges that Defendant Garcia "deliberately withheld" his 602 appeal "in attempt to help C/O Angulo out of this mess." FAC at 8. Additionally, Plaintiff states that Defendants Trout and Angulo denied him access to the courts "by trying to stop me from proceeding with my complaint and by harassing me in an effort to meet those ends." *Id.* at 10–11. However, Plaintiff has not established any actual injury resulting from the alleged acts of the Defendants. There is ample evidence to support Defendants' position that Plaintiff's 602 appeal against Defendant Angulo was processed through the normal course in the prison grievance system and that a third level Director's Level Decision was issued on January 7, 2003. Additionally, Plaintiff was able to commence this lawsuit on August 21, 2003. Accordingly, it is recommended that the Court dismiss without leave to amend Plaintiff's access to courts claims against

Defendants Garcia, Angulo, and Trout pursuant to FED.R.CIV.P. 12(b)(6) for failure to state a claim upon which relief may be granted.

### e. Failure to Protect and Personal Involvement

■ Defendants Giurbino, Stokes, and Hudson move to dismiss all federal claims against them on the ground that Plaintiff failed to state a claim against them pursuant to FED.R.CIV.P. 12(b)(6). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir.1978). "Causation is, of course, a required element of a § 1983 claim." *Estate of Brooks v. United States,* 197 F.3d 1245, 1248 (9th Cir.1999). The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. *See Rizzo v. Goode,* 423 U.S. 362, 370–71, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Leer v. Murphy,* 844 F.2d 628, 633 (9th Cir. 1988); *Berg v. Kincheloe,* 794 F.2d 457, 460 (9th Cir.1986).

■ There is no *respondeat superior* liability under 42 U.S.C. § 1983. *Palmer v. Sanderson,* 9 F.3d 1433, 1437–38 (9th Cir.1993). Thus, to avoid the respondeat superior bar, the plaintiff must allege **personal acts** by Defendants Giurbino, Stokes, and Hudson, which have a direct causal connection to the constitutional violation at issue. *Sanders v. Kennedy,* 794 F.2d 478, 483 (9th Cir.1986) (*emphasis added*). Section 1983 provides for relief only against those who, through their personal involvement (as evidenced by (a) affirmative acts, (b) participation in another's affirmative acts, (c) failure to perform legally required duties, or (d) setting in motion a series of acts by others) cause the deprivation of the plaintiff's constitutionally protected rights. *See Johnson,* 588 F.2d at 743.

■ Here, Plaintiff has failed to allege facts sufficient to show personal liability on the part of Defendants Giurbino, Stokes, and Hudson. Plaintiff states that Defendant Giurbino "failed to take the necessary steps to prevent this type of behavior and to protect the inmates under his care." FAC at 5. Additionally, Plaintiff claims that "by the denial of the appeal before him, Warden Giurbino effectively allowed behavior to go unchecked" thus further subjecting Plaintiff to "cruel and unusual punishment." *Id.*

Plaintiff next alleges that Defendant Stokes failed to protect him from "harm from staff members under his jurisdiction" and that Defendant Stokes denied Plaintiff his due process rights when he "failed to take appropriate action in this matter and denied the 602 Inmate appeal that went before him." *Id.* at 6.

Plaintiff further states that Defendant Hudson "failed to protect me" from the "cruel and unusual punishment that I was subjected to by members of his staff" and that Defendant Hudson's "actions in the denial of the appeal allowed the misconduct to go on unchecked and unpunished." *Id.* at 7.

None of the allegations against Defendants Giurbino, Stokes, and Hudson are supported by any facts sufficient to show that there was any personal involvement by these Defendants in the alleged sexual misconduct by Defendant Angulo. Nor has Plaintiff alleged facts sufficient to support that once Defendants Giurbino, Stokes, and Hudson became aware of the alleged misconduct through the inmate grievance process that any further acts of

sexual misconduct occurred. Therefore, it is recommended that the Court dismiss without leave to amend all claims against Defendants Giurbino, Stokes and Hudson pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted.

### f. Physical Injury

■ Defendants Angulo, Giurbino, Stokes, Hudson, Garcia, and Trout seek to dismiss all federal claims against them on the ground that Plaintiff has failed to satisfy the physical injury requirement as set forth in 42 U.S.C. § 1997e(e). That section, as amended by the Prison Litigation Reform Act of 1995, Pub.L.No. 104–134, 110 Stat, 1321 (1996) ("PLRA"), provides that "no federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Here, Plaintiff claims only that the acts of Defendant Angulo "messed me up in the head." FAC at 10. There are no facts sufficient to show any further injury to Plaintiff. The required showing of physical injury need not be significant, but must be more than *de minimis*. *Oliver v. Keller*, 289 F.3d 623 (9th Cir.2002). Plaintiff does not allege any physical injury, *de minimis* or otherwise. Thus, it is recommended that the Court dismiss without leave to amend the claims against Defendants Angulo, Giurbino, Stokes, Hudson, Garcia, and Trout for failure to meet the physical injury requirement imposed by 42 U.S.C. § 1997e(e) as amended by the PLRA.

### IV.

### *CONCLUSION AND RECOMMENDATION*

For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order:

(1) **GRANTING** without prejudice and without leave to amend Defendants' Motion to Dismiss as to Defendants Giurbino, Stokes, Hudson, Garcia, and Trout for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a);

(2) **GRANTING** with prejudice Defendants' Motion to Dismiss pursuant to FED. R.CIV.P. 12(b)(6) on Eleventh Amendment grounds but only to the extent Plaintiff seeks damages against them in their official capacities;

(3) **GRANTING** without prejudice and without leave to amend Defendants' Motion to Dismiss pursuant to FED.R.CIV.P. 12(b)(6) as to all Defendants for failing to state a cognizable section 1983 claim.

**IT IS HEREBY ORDERED** that no later than **July 30, 2004,** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **August 13, 2004.** The parties are advised that fail to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan,* 158 F.3d 449, 455 (9th Cir.1998); *Martinez v. Ylst,* 951 F.2d 1153, 1156 (9th Cir.1991).

Dated: June 28, 2004.